ROWAN COUNTY BOARD OF EDUCATION v. UNITED STATES GYPSUM CO.

No. 339A91

(Filed 17 July 1992)

1. **Limitation of Actions § 2 (NCI3d) — asbestos in schools — action for fraud — statutes of limitation and repose — applicability to State**

The trial court correctly denied defendant USG's motion for summary judgment based on various statutes of limitation and repose in an action in which plaintiff school board alleged fraud and misrepresentation by defendant in the sale of products containing asbestos for use in schools. The doctrine of *nullum tempus* survives in North Carolina and applies to exempt the State and its political subdivisions from the running of time limitations unless the pertinent statute expressly includes the State. Moreover, the political entity in question must be pursuing a governmental function; if the function is proprietary, time limitations run against the State and its subdivisions unless the statute at issue expressly excludes the State. Plaintiff was acting in a governmental capacity when it brought suit to recover lost tax money expended in the construction of public schools, an activity incidental to and part of the State's constitutional duty to provide public educa-

1

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

tion, and to abate a potential health hazard to students, teachers, staff, administrators, parents, and others using school buildings.

**Am Jur 2d, Fraud and Deceit § 407.**

2. **Fraud, Deceit and Misrepresentation § 18 (NCI4th) — asbestos — fraud and misrepresentation in promotional literature — reliance**

The trial court correctly denied defendant's motions for directed verdict and judgment notwithstanding the verdict as to plaintiff's fraud and misrepresentation claims where plaintiff clearly presented evidence in support of the existence of a false representation or the concealment of a material fact, defendant contended that plaintiff failed to identify a specific misrepresentation upon which it relied, and a jury could reasonably find that the agent of plaintiff responsible for ordering the material containing asbestos relied on defendant's promotional literature and the representations in it.

**Am Jur 2d, Fraud and Deceit § 482.**

3. **Appeal and Error § 451 (NCI4th) — appeal from Court of Appeals to Supreme Court — preservation of issue**

An argument was not properly before the Supreme Court and was not considered where it was not presented in either the brief to the Court of Appeals or the petition for discretionary review.

**Am Jur 2d, Fraud and Deceit § 487.**

4. **Damages § 85 (NCI4th) — asbestos — action for fraud and misrepresentation — punitive damages**

There was no error in a punitive damages award in an action for fraud and misrepresentation in supplying building materials containing asbestos to plaintiff school system where there was a question as to the legal sufficiency of the evidence of fraud as to two of the three schools involved and the jury made one combined award for punitive damages. The wording of the verdict was agreed upon by the parties and was sufficient to support the award of punitive damages regardless of whether the evidence was sufficient to support a finding of fraud as to two of the schools. Defendant will not be heard

**ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.**

[332 N.C. 1 (1992)]

to complain on appeal where it did not object to the verdict form and, indeed, consented to it.

**Am Jur 2d, Fraud and Deceit § 347.**

Justice WEBB dissenting.

ON appeal by defendant pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, 103 N.C. App. 288, 407 S.E.2d 869 (1991), affirming a judgment entered by *Washington, J.*, at the 3 January 1990 Special Session of Superior Court, ROWAN County, as well as an order of *Washington, J.*, entered 14 February 1990, denying defendant's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial. Defendant's petition for discretionary review as to additional issues was allowed by the Supreme Court 2 October 1991. Heard in the Supreme Court 14 April 1992.

*Woodson, Linn, Sayers, Lawther, Short & Wagoner, by Donald D. Sayers; Ness, Motley, Loadholt, Richardson & Poole, by Edward J. Westbrook; and J. Wilson Parker for plaintiff appellee.*

*Kennedy, Covington, Lobdell & Hickman, by William C. Livingston; and Morgan, Lewis & Bockius, by James D. Pagliaro and Rebecca J. Slaughter, for defendant appellant.*

*Haywood, Denny, Miller, Johnson, Sessoms & Patrick, by Michael W. Patrick, for Forsyth Memorial Hospital, Inc. and Carolina Medicorp, Inc., amici curiae.*

WHICHARD, Justice.

On 30 July 1985, the Rowan County Board of Education ("Rowan") brought suit against United States Gypsum Company ("USG") to recover costs associated with the removal of asbestos-containing ceiling plasters from certain of its schools. After a three-week jury trial in 1990, a jury awarded Rowan $812,984.21 in compensatory damages and $1,000,000.00 in punitive damages. The trial court entered judgment in those amounts and denied USG's motions for judgment notwithstanding the verdict and for a new trial.

On appeal to this Court, USG raises three issues:

1) Whether the Court of Appeals erred in refusing to reverse its prior ruling that USG was not entitled to summary judg-

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

ment based on the defenses of the statutes of limitation and repose?

2) Whether the Court of Appeals erred in affirming the trial court's order denying USG's motions for directed verdict and judgment notwithstanding the verdict as to Rowan's fraud and misrepresentation claims?

3) Whether the Court of Appeals erred in affirming the trial court's decision not to instruct the jury on the issue of the "state of the art"?

As to the first issue, we hold that the common law doctrine of *nullum tempus occurrit regi* protected Rowan from the running of any potentially applicable statutes of limitation or repose. As to the second issue, which contains three sub-issues, we hold that the trial court did not err in denying the motions for directed verdict and judgment notwithstanding the verdict. Finally, we conclude that discretionary review was improvidently allowed as to the issue regarding the "state of the art" jury instruction.

This controversy has its roots in 1980 communications and publications from the federal Environmental Protection Agency and the North Carolina Department of Public Instruction that alerted Rowan to possible dangers posed by the presence of in-place construction materials containing asbestos. Rowan alleged that between 1950 and 1961 it bought and installed two brands of asbestos-containing ceiling plasters from USG, marketed under the names of Audicote and Sabinite. According to Rowan, Audicote was placed in the ceilings of South and East Rowan High Schools, while Sabinite was installed in Cleveland and Granite Quarry Elementary Schools and Corriher-Lipe High School. After consulting experts in government and the private sector, Rowan decided to remove the asbestos-containing materials. Prior to beginning the removal process in 1983, Rowan offered USG the opportunity to perform air samples; USG declined.

On 30 July 1985, Rowan filed a suit against USG sounding in negligence, fraud and misrepresentation, and breach of implied warranty. On 18 June 1986, USG moved for summary judgment on grounds that Rowan's claims were barred by the applicable statutes of limitation and repose. On 10 October 1986, the trial court granted the motion. The Court of Appeals reversed, holding that statutes of limitation and repose do not run against a political

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

subdivision of the State when it is pursuing a governmental purpose. The Court of Appeals further held that Rowan's "action to recover lost tax dollars expended in the preservation and maintenance of school property and necessitated by a potential health hazard to our school personnel and children" was a governmental function in pursuit of a sovereign purpose. *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 87 N.C. App. 106, 115, 359 S.E.2d 814, 819 (1987) (*"Rowan I"*). On 7 December 1987, this Court denied USG's petition for discretionary review of the Court of Appeals decision. *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 321 N.C. 298, 362 S.E.2d 782 (1987).

On remand, the case was tried before Washington, J., from 3 January to 26 January 1990. The trial court directed verdicts for USG on all claims as to Cleveland Elementary School and Corriher-Lipe High School. The trial court also directed verdicts for USG on the claim of breach of implied warranty as to all schools. On the remaining claims, the trial court denied USG's motions for directed verdict. The jury returned a verdict for Rowan on the claims of fraud and negligence as to the Granite Quarry Elementary School and East and South Rowan High Schools projects, and it awarded compensatory and punitive damages. The trial court entered judgment on the verdict and denied USG's motions ·for judgment notwithstanding the verdict and a new trial.

USG appealed to the Court of Appeals, where a divided panel affirmed, with Greene, J., concurring in part and dissenting in part. *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 103 N.C. App. 288, 407 S.E.2d 860 (1991) (*"Rowan II"*). USG appealed as of right on the issue raised by Judge Greene's dissent, and this Court granted USG's petition for discretionary review as to additional issues. *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 330 N.C. 121, 409 S.E.2d 601 (1991).

[1] The first issue, which is before us on discretionary review, is whether USG was entitled to summary judgment because Rowan's suit was time-barred pursuant to the following statutes of limitation and repose: N.C.G.S. §§ 1-15(b), -50(5), -50(6), -52(5). Until its repeal in 1979, N.C.G.S. § 1-15(b), a professional malpractice statute of repose, provided for a ten-year repose period. N.C.G.S. § 1-15(b) (Supp. 1971) (repealed by 1979 Session Laws, c. 654, s.3). N.C.G.S. § 1-50(5), a real property improvement statute of repose, and N.C.G.S. § 1-50(6), a products liability statute of repose, both establish a

six-year repose period. N.C.G.S. §§ 1-50(5), -50(6) (Supp. 1991). N.C.G.S. § 1-52(5) prescribes a three-year limitation period. N.C.G.S. § 1-52(5) (Supp. 1991).

Rowan alleged that USG's asbestos-containing products were installed in Rowan County schools from 1950 to 1961. Clearly, if USG is correct that the statutes of limitation and repose apply to Rowan, Rowan's suit, which was brought twenty-four years after the last installation, was time-barred. Rowan contends, and the Court of Appeals held in *Rowan I*, that as a political subdivision of the State which was performing a governmental function, Rowan escaped the running of the statutes of limitation and repose under the common law doctrine of *nullum tempus occurrit regi*. The doctrine, which is translated as "time does not run against the king," developed at common law under the reasoning that the king, who was preoccupied with weighty affairs, "should [not] suffer by negligence of his officers" in failing to pursue legal claims. *Armstrong v. Dalton*, 15 N.C. (4 Dev.) 568, 569 (1834). While *nullum tempus* "appears to be a vestigial survival of the prerogative of the Crown," the source of its continuing vitality " 'is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers.' " *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132, 82 L. Ed. 1224, 1227-28 (1938) (quoting Story, J., in *United States v. Hoar*, Fed. Cas. No. 15,393, p. 330); *accord Mt. Lebanon Sch. Dist. v. W.R. Grace and Co.*, --- A.2d ---, ---, 1992 WL 84074, at *3 (Pa. Super. Apr. 29, 1992).

USG presents a multi-tiered argument against application of the doctrine of *nullum tempus* in this case. First, it contends that our legislature abrogated *nullum tempus* in 1868 when it passed the statute now codified as N.C.G.S. § 1-30. That statute, which retains its original language unchanged, provides that "[t]he limitations prescribed by law apply to civil actions brought in the name of the State, or for its benefit, in the same manner as to actions by or for the benefit of private parties." N.C.G.S. § 1-30 (1983). As evidence that N.C.G.S. § 1-30 abrogated the common law doctrine of *nullum tempus*, USG cites several cases spanning a forty-year period from 1885 to 1924: *Manning v. R.R.*, 188 N.C. 648, 655, 125 S.E. 555, 565 (1924); *Tillery v. Lumber Co.*, 172 N.C. 296, 297-98, 90 S.E. 196, 197 (1916); *Threadgill v. Wadesboro*, 170 N.C. 641, 643, 87 S.E. 521, 522 (1916); *Hospital v. Fountain*, 129 N.C. 90, 92-93, 39 S.E. 734, 735 (1901); *Furman v. Timberlake*, 93

N.C. 66, 67 (1885). According to USG, the legislature's abrogation of *nullum tempus* means that the State and its political subdivisions are subject to the running of time limitations, unless the pertinent statute expressly *excludes* the State. *Manning*, 188 N.C. at 665, 125 S.E. at 565; *Threadgill*, 170 N.C. at 643, 87 S.E. at 522.

In response, Rowan contends that N.C.G.S. § 1-30 did not work a complete abrogation of *nullum tempus*, that the doctrine survives in North Carolina, and that under the doctrine no time limitation applies against the State or its political subdivisions unless the pertinent statute expressly *includes* the State. See the following: *State v. West*, 293 N.C. 18, 25, 235 S.E.2d 150, 154 (1977); *Pipeline Co. v. Clayton, Comr. of Revenue*, 275 N.C. 215, 229, 166 S.E.2d 671, 680-81 (1969); *Miller v. McConnell*, 226 N.C. 28, 34, 36 S.E.2d 722, 726 (1946); *Raleigh v. Bank*, 223 N.C. 286, 293, 26 S.E.2d 573, 577 (1943); *Charlotte v. Kavanaugh*, 221 N.C. 259, 266, 20 S.E.2d 97, 101 (1942); *Asheboro v. Morris and Morris v. Asheboro*, 212 N.C. 331, 333, 193 S.E. 424, 425-26 (1937); *Wilkes County v. Forester*, 204 N.C. 163, 168, 167 S.E. 691, 693 (1933); *Shale Products Co. v. Cement Co.*, 200 N.C. 226, 230, 156 S.E. 777, 779 (1930); *New Hanover County v. Whiteman*, 190 N.C. 332, 334, 129 S.E. 808, 809 (1925); *Wilmington v. Cronley*, 122 N.C. 383, 387-88, 30 S.E. 9, 10 (1898).

As can be seen, we have two contrary lines of cases. Under the first, "the State is to be considered the same as a private citizen when applying a time limitation, unless the pertinent statute contains an express statement *excluding* the State from its strictures." *Rowan I*, 87 N.C. App. at 109, 359 S.E.2d at 816. Under the second, all of which (except *Cronley*) are later cases, *nullum tempus* survives, and the State is not subject to the running of time limitations except in those cases where the pertinent statute expressly *includes* the State. USG characterizes the second line as a narrow exception developed by the Court for tax cases. *See Guilford County v. Hampton*, 224 N.C. 817, 819, 32 S.E.2d 606, 608 (1945) (recognizes the existence of two lines of cases and states that "[t]he trend is, at least, to limit [the doctrine's] application to matters of taxation"). While most of the cases in the second line involve matters of taxation, they do not represent a mere exception to abrogation of *nullum tempus*; the doctrine was applied in those cases because the power to tax is "an attribute of sovereignty." *Whiteman*, 190 N.C. at 334, 129 S.E. at 809; *accord Raleigh v. Bank*, 223 N.C. at 293, 26 S.E.2d at 577; *Kavanaugh*, 221 N.C.

at 266, 20 S.E.2d at 101. The latest case applying the doctrine shows that the second line of cases does not represent a mere narrow exception to abrogation of *nullum tempus*, but rather reveals the continuing vitality of the doctrine in this jurisdiction. There, this Court applied the doctrine in a suit brought by the State to recover possession of historical documents. *West*, 293 N.C. 18, 235 S.E.2d 150.

Our review of the case law persuades us that the second line of cases overrules, *sub silentio*, the earlier line. In fact, we cannot speak of two monolithic lines of cases, one earlier, the other later, because the second case that addressed the issue, *Cronley* (1898), clearly stated, "[i]t needs no citation of authority to show that statutes of limitation never apply to the sovereign unless expressly named therein." *Cronley*, 122 N.C. at 387, 30 S.E. at 10. Further, not only is the first line of cases not uninterrupted, but it rests at least in part on a misreading of *Cronley*. In *Threadgill*, the Court incorrectly cited *Cronley* for the following proposition: that *nullum tempus* no longer applies in North Carolina "unless the statute applicable to or controlling the subject provided otherwise." *Threadgill*, 170 N.C. at 643, 87 S.E. at 522. As is clear from the above quotation from *Cronley*, *Cronley* stands for the opposite proposition. Unfortunately, the misreading was not caught and was passed on in the next two cases in the anti-*nullum tempus* line. *Manning*, 188 N.C. at 665, 125 S.E. at 565; *Tillery*, 172 N.C. at 297-98, 90 S.E. at 197.

We now clarify the status of this doctrine in this jurisdiction: *nullum tempus* survives in North Carolina and applies to exempt the State and its political subdivisions from the running of time limitations unless the pertinent statute expressly includes the State.[1] The General Assembly has acquiesced in this interpretation of N.C.G.S. § 1-30. In the latest case addressing *nullum tempus* prior to the litigation at hand, this Court in effect invited the legislature to correct the Court's understanding of N.C.G.S. § 1-30 if the legislature intended that statute to remove the State's protection from the running of time limitations. *West*, 293 N.C. at 25, 235 S.E.2d at 154 ("[W]hether there ought to be a statute of limitations applicable to suits by the State is a matter for the Legislature, not the courts."). In the fifteen years since that invitation, the

---

1. A second qualification, explained *infra*, is that the political entity in question must be pursuing a governmental function.

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

General Assembly has not acted upon it. Indeed, in almost a century since *Cronley*, and in the sixty-seven years since the emergence of a solid, uninterrupted line of cases starting with *Whiteman*, the legislature has not taken issue with the Court's interpretation of N.C.G.S. § 1-30. The legislature's inactivity in the face of the Court's repeated pronouncements that *nullum tempus* continues to apply in North Carolina can only be interpreted as acquiescence by, and implicit approval from, that body. *See Hewett v. Garnett*, 274 N.C. 356, 361, 163 S.E.2d 372, 375-76 (1968) (where the General Assembly had convened in seventeen regular and a number of special sessions and had failed to make any change in a statute, the Court assumed that "the law-making body [was] satisfied with the interpretation this Court ha[d] placed upon [it]"); *Raleigh v. Bank*, 223 N.C. at 292, 26 S.E.2d at 576 (noting that the General Assembly had made no change to the statute of limitation at issue during the legislative session intervening between *Kavanaugh* and *Raleigh v. Bank*, the Court stated that "[o]bviously the law on this point was regarded as settled").

*Nullum tempus* does not, however, apply in every case in which the State is a party. If the function at issue is governmental, time limitations do not run against the State or its subdivisions unless the statute at issue expressly *includes* the State. If the function is proprietary, time limitations do run against the State and its subdivisions unless the statute at issue expressly *excludes* the State. *See Rowan I*, 87 N.C. App. at 113, 359 S.E.2d at 818. This approach is consistent with the language of N.C.G.S. § 1-30, which provides that limitations apply to the State "in the same manner as to actions by or for the benefit of private parties." When the State or one of its political arms acts in a governmental fashion, it does not act in the same manner as a private party.

As its second-tier argument, USG contends that the Court of Appeals inappropriately imported the governmental/proprietary concept from the unrelated area of sovereign immunity and that this concept previously had not been applied in the context of *nullum tempus*. We conclude that the Court of Appeals followed precedent in applying the governmental/proprietary test. As early as 1945, this Court employed the same distinction to determine when the State benefits from the protection of *nullum tempus*. *Kavanaugh*, 221 N.C. at 265-66, 20 S.E.2d at 101 (statutes of limitation apply "in an action brought in the name of the State or for its benefit . . ., when the action is not brought in the capacity

of its sovereignty"); *see also West*, 293 N.C. at 27, 235 S.E.2d at 155; *Hampton*, 224 N.C. at 820, 32 S.E.2d at 608; *Raleigh v. Bank*, 223 N.C. at 293, 26 S.E.2d at 577. In fact, several of the cases USG cites in support of its position that *nullum tempus* has been abrogated can be explained by the governmental/proprietary dichotomy. Both *Fountain* and *Hampton* involved suits by state entities to recover the costs of maintaining nonindigent patients. In *Tillery*, a state board of education and the holders of timber rights on land to which the board held title sued the defendant in trespass for entering the land and cutting and removing lumber. The activities at issue in these cases, pecuniary activity or activity of a type historically performed by private individuals, are proprietary in nature. *Sides v. Hospital*, 287 N.C. 14, 22-26, 213 S.E.2d 297, 302-04 (1975); *but cf. In re Erny's Estate*, 337 Pa. 542, 546, 12 A.2d 333, 335 (Pa. 1940) (maintenance and treatment of an indigent patient is governmental in nature).

USG argues, however, that even if the Court holds that *nullum tempus* survives in this state, and that its application turns on the governmental/proprietary dichotomy, the doctrine does not apply here because the construction and maintenance of local public schools by a local school board is not a governmental function. We disagree. *Cf. Seibold v. Library*, 264 N.C. 360, 361, 141 S.E.2d 519, 520 (1965) (holding that operation of a free public library is a governmental function, as "[a]n adequate library is essential for the dissemination of knowledge"; rejecting plaintiff's argument that operation of the library by a municipality makes the operation a proprietary function, as that argument would apply equally to "the operation of public schools"); *Board of Education v. Allen*, 243 N.C. 520, 523, 91 S.E.2d 180, 183 (1956) (condemning of property as the site of a public school "is a political and administrative measure"); *Benton v. Board of Education*, 201 N.C. 653, 657, 161 S.E. 96, 97 (1931) (in performing the statutory duty of transporting students to school, "the county board of education is exercising a governmental function").

Education is a governmental function so fundamental in this state that our constitution contains a separate article entitled "Education." N.C. Const. art IX. Section 2 of that article mandates that the General Assembly "provide by taxation and otherwise for a general and uniform system of free public schools" and provides that the General Assembly "may assign to units of local government such responsibility for the financial support of the free public

schools as it may deem appropriate." *Id.* art. IX, § 2. Section 6 of Article IX requires that state revenues "shall be faithfully appropriated and used exclusively for establishing and maintaining a uniform system of free public schools." *Id.* art. IX, § 6. Pursuant to this constitutional mandate, the General Assembly created the State Board of Education and propounded a state policy "to provide from State revenue sources the instructional expenses for current operations of the public school system as defined in the standard course of study." N.C.G.S. § 115C-408 (1991). The General Assembly also assigned to local school boards, "in order to safeguard the investment made in public schools," the duty to "keep all school buildings in good repair to the end that all public school property shall be taken care of and be at all times in proper condition for use." N.C.G.S. § 115C-524 (1991). The General Assembly further legislated that:

> A local board of education shall institute all actions, suits, or proceedings against officers, persons, or corporations, or their sureties, for the recovery, preservation, and application of all money or property which may be due to or should be applied to the support and maintenance of the schools.

N.C.G.S. § 115C-44(a) (1991).

Given that the State (1) has undertaken the responsibility to provide free public schools, (2) has delegated day-to-day administration and operation of those schools to counties and local school boards, including the power to bring suit to recover money or property "which may be due to or should be applied to the support and maintenance of the schools" and (3) has retained the duty of providing those local entities with considerable operating funds from state revenues, we hold that Rowan, in the matters at issue, was acting as an arm of the State and pursuing the governmental function of constructing and maintaining its schools. Rowan also pursued a governmental function in bringing this suit to recover costs associated with the abatement of a potential health risk to school populations incurred as a result of the presence of construction materials containing asbestos. *Rhodes v. Asheville*, 230 N.C. 134, 137, 52 S.E.2d 371, 373 (a municipality acts in its sovereign capacity when it acts on behalf of the state "in promoting or protecting the health, safety, security or general welfare of its citizens"), *reh'g denied*, 230 N.C. 759, 53 S.E.2d 313 (1949); *see also District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 407,

410 (D.C. App. 1989), *cert. denied*, --- U.S. ---, 112 L. Ed. 2d 173 (1990) (District's claim for removal of widespread contamination of public buildings, including schools, from asbestos vindicates public right to health and safety and is in pursuit of a governmental function); *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 474-75, 546 N.E.2d 580, 601-02 (1989) (health concerns and safety of a large segment of school populations and users, the facts that the buildings were owned by the government, maintained with tax revenues, and used for public purposes, and the statutory duty placed on school districts to cooperate in efforts to abate asbestos, all supported the court's characterization of the board's suit as governmental). Other jurisdictions involved in like litigation, and with similar constitutional and statutory provisions, have held likewise. *See County of Johnson, Tenn. v. U.S. Gypsum Co.*, 664 F. Supp. 1127, 1128 (E.D. Tenn. 1985); *Mt. Lebanon Sch. Dist.*, --- A.2d at ---, 1992 WL 84074, at *5-6; *Livingston Bd. of Educ. v. United States Gypsum Co.*, 249 N.J. Super. 498, 505, 592 A.2d 653, 656-57 (1991) ("[I]t is beyond doubt that school districts are state agencies fulfilling a state purpose.").

The majority of jurisdictions that have addressed the issue appear to apply *nullum tempus* on behalf of local school boards and other political subdivisions in both asbestos and other school construction cases. *See* **Federal:** *Tucson Unified Sch. Dist. v. Owens-Corning Fiberglass Corp.*, No. CIV 87-975-TUC-WDB (D. Ariz. Sept. 25, 1991), slip op. at 5-7 (construction of schools is a governmental function); *City of Philadelphia v. Lead Inds. Ass'n*, 1991 WL 170810, at *8-9 (E.D. Pa. Aug. 26, 1991) (where federal law requires plaintiff to abate lead-based paint and where no private plaintiff may sue directly to obtain the same relief, the function is governmental); *Altoona Area Vocational Technical Sch. v. U.S. Mineral Products Co.*, 1988 WL 236355, at *3 (W.D. Pa. Apr. 13, 1988) (where school had legal, statutory duty to abate asbestos, plaintiff exercised governmental function in bringing suit); *County of Johnson v. U.S. Gypsum Co.*, 664 F. Supp. at 1128 (where State has constitutional responsibility to provide public education, has delegated school administration to counties, and provides counties with considerable operating funds, operation of public schools is a governmental function); **District of Columbia:** *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d at 407, 410 (District's claim to remove asbestos from schools is in pursuit of a government function); **Illinois:** *A, C And S, Inc.*, 131 Ill. 2d at 474-75, 546 N.E.2d at 601-02 (where school

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

buildings are owned by the government, maintained with tax revenues, and used for public purposes, board of education's suit to abate asbestos hazard is governmental); **Kansas:** *Unified Sch. Dist. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d 346, 351, 629 P.2d 196, 203 (1981) (as construction of a school building is incidental to and part of the state's duty to provide public education, operation of a high school building by a local school board is a governmental function); **New Jersey:** *Livingston Bd. of Educ.*, 249 N.J. Super. at 505, 592 A.2d at 656-57 (although public schools are supported locally and school boards are chosen locally, schools receive state funding, so there "is no doubt that in constructing and maintaining public schools, a school district is acting in a governmental and not a proprietary capacity"); **Pennsylvania:** *Mt. Lebanon Sch. Dist.*, --- A.2d at ---, 1992 WL 84074, at *6 (a school district is an agency of the legislature and acts in a governmental capacity when it enters into contractual relations with private parties to construct and maintain suitable school facilities); **Washington:** *Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co.*, 103 Wash. 2d 111, 116, 691 P.2d 178, 182 (1984) (statute of limitation does not run against school district because construction of school buildings is incidental to and part of state duty to provide public education); **Wyoming:** *Laramie County Sch. Dist. Number 1 v. Muir*, 808 P.2d 797, 802-04 (Wyo. 1991) (construction and maintenance of school buildings are sovereign functions); *cf. New Jersey Educ. Facilities Auth. v. Gruzen Partnership*, 125 N.J. 66, 71-76, 592 A.2d 559, 560-64 (1991) (while the activities of the state agency in bringing suit to address defective design and construction of a student center were governmental in nature, New Jersey's abrogation of sovereign immunity works a prospective abrogation of *nullum tempus* as well as to contractual claims).We find the reasoning of these cases more persuasive than the reasoning of the following cases cited by USG. **Federal:** *Anderson County Bd. of Educ. v. Nat'l Gypsum Co.*, 821 F.2d 1230, 1232-33 (6th Cir. 1987) (where the subordinate political body was primarily involved in normal commercial activity not inextricably connected to a state function, where the state did not regulate the type of roofing to be used, and where no state monies would be substantially affected by the suit, the board did not enjoy immunity from the running of the statute of limitations); *In re Asbestos Sch. Litigation*, 768 F. Supp. 146, 152 (E.D. Pa. 1991) (in asbestos litigation, while school districts may be acting in a governmental role, they are not acting in a role that is "exclusively governmental"); *West Haven Sch. Dist. v. Owens-Corning Fiberglas Corp.*, 721 F. Supp.

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

1547, 1551-52 (D. Conn. 1988) (suit by school district to abate asbestos was a purely local function without statewide implications); *Kelley v. Metropolitan County Bd. of Educ.*, 615 F. Supp. 1139, 1152 (D.C. Tenn. 1985) (dicta from a school desegregation case to effect that maintenance of physical structure and land of public schools is a local function), *rev'd on other grounds*, 836 F.2d 986 (6th Cir. 1987); **Connecticut:** *Bd. of Educ. v. Dow Chemical Co.*, 40 Conn. Supp. 141, ---, 482 A.2d 1226, 1228 (Conn Super. Ct. 1984) (where maintenance of school property is not encompassed within educational activities of the state and where the funding source for such building and maintenance is primarily local, local school board is not acting as an agent of the state).

Further, while USG correctly notes that this Court has expressed an intent to restrict rather than extend application of sovereign immunity, *Koontz v. City of Winston-Salem*, 280 N.C. 513, 529-30, 186 S.E.2d 897, 908 (1972), our treatment of that doctrine does not affect our view of *nullum tempus*, which serves a different purpose. While the two doctrines share a similar "philosophical origin and have a similar effect of creating a preference for the sovereign over the ordinary citizen," *City of Shelbyville v. Shelbyville Restorium, Inc.*, 96 Ill. 2d 457, 460, 451 N.E.2d 874, 875-76 (1983), retrenchment on the one does not require retrenchment on the other. While limiting sovereign immunity diminishes the government's escape of its misdeeds, the same concern for the rights of the public supports retention of *nullum tempus*, as that doctrine allows the government to pursue wrongdoers in vindication of public rights and the public purse. *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d at 409; *see also Muir*, 808 P.2d at 803 n.3; *cf. Hardbarger v. Deal*, 258 N.C. 31, 35, 127 S.E.2d 771, 774 (1962) ("The statute of limitations, although not an unconscionable defense, is not such a meritorious defense that either the law or the facts should be strained in aid of it."); *but see City of Colorado Springs v. Timberlake Assocs.*, 824 P.2d 776, 781-82 (Colo. 1992) (declines to take route of courts that have distinguished sovereign immunity and *nullum tempus* in order to retain the latter in the face of abrogation of the former); *Gruzen Partnership*, 125 N.J. at 76, 592 A.2d at 564 (in order to be consistent with legislature's abrogation of sovereign immunity, the court prospectively abrogated *nullum tempus*).

In a final argument against allowing Rowan to maintain its suit beyond the running of applicable statutes of repose, USG argues

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

that statutes of repose are different from statutes of limitation and that *nullum tempus* applies only to the latter. This Court has recognized that unlike statutes of limitation, statutes of repose are not mere procedural limitations on rights. They also constitute substantive limitations that act as conditions precedent to the accrual of an action. *Bolick v. American Barmag Corp.*, 306 N.C. 364, 366-67, 293 S.E.2d 415, 417 (1982). USG argues that it would be anomalous if the substantive repose rights granted to a class of defendants were made contingent upon the character of a particular plaintiff, which will be the case if Rowan is allowed to circumvent the applicable statutes of repose merely because it is a subdivision of the sovereign. As authority for its argument, USG cites a Virginia case which holds that *nullum tempus* is limited to statutes of limitation and does not apply to statutes of repose. *Commonwealth v. Owens-Corning Fiberglas Corp.*, 238 Va. 595, 600, 385 S.E.2d 865, 868 (1989).

While the Virginia case discusses the differing natures of statutes of repose and statutes of limitation, the case turns at least in part on the existence of a Virginia statute codifying the common law doctrine of *nullum tempus*. That statute refers only to statutes of limitation. We do not have a codified version of *nullum tempus* limiting it to statutes of limitation. Further, we are persuaded by the reasoning of cases which hold that despite the fact that statutes of repose differ in some respects from statutes of limitation, they are still time limitations and therefore still subject to the doctrine that time does not run against the sovereign. *See Bellevue*, 103 Wash. 2d at 118-20, 691 P.2d at 183-84 (recognizes difference between a builder limitation statute with a six-year accrual period and conventional statutes of limitation, but holds that statute exempting State from running of statutes of limitation applies to both kinds of time limitations); *Muir*, 808 P.2d at 804 (court applies *nullum tempus* to exempt local school board from running of a statute, which, although termed a statute of limitation by the Wyoming court, works like a real property improvement statute of repose); *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d at 401 ("It is well settled that sovereigns enjoy a common-law immunity from the operation of statutes of limitations and repose."); *Rowan I*, 87 N.C. App. at 113, 359 S.E.2d at 819 ("when the State or its political agencies are pursuing a sovereign . . . purpose . . . statutes of limitation or statutes of repose do *not* apply *unless* the statute expressly includes the State.").

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

In summary, when the State or one of its political subdivisions is pursuing a governmental purpose, the doctrine of *nullum tempus* protects that political body from the running of statutes of limitation and repose unless the pertinent statute expressly includes the State. Rowan was acting in a governmental capacity when it brought suit to recover lost tax money expended in the construction of public schools — an activity incidental to and part of the State's constitutional duty to provide public education — and to abate a potential health hazard to students, teachers, staff, administrators, parents, and others using school buildings. Therefore, the Court of Appeals correctly affirmed the trial court's denial of USG's motion for summary judgment based on the various statutes of limitation and repose.

[2] USG's second issue, whether the Court of Appeals erred in affirming the trial court's order denying USG's motions for directed verdict and judgment notwithstanding the verdict as to Rowan's fraud and misrepresentation claims, in fact contains three sub-issues. As the first sub-issue, which is before us on discretionary review, USG contends that Rowan failed to prove that it or its agents relied upon any specific representation of USG in ordering Audicote for South Rowan High School.

A motion for judgment notwithstanding the verdict "is essentially a renewal of an earlier motion for directed verdict." *Bryant v. Nationwide Mutual Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985). In considering both types of motions, trial and appellate courts apply the same standard, under which courts

> must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Id.* at 369, 329 S.E.2d at 337-38. Further, judgment notwithstanding the verdict is "cautiously and sparingly granted." *Id.* In fraud cases, it is inappropriate to grant motions for directed verdict and judgment notwithstanding the verdict if there is evidence that supports the plaintiff's prima facie case in all its constituent elements. *Smith v. Pass*, 95 N.C. App. 243, 255, 382 S.E.2d 781, 789 (1989); *Shaver v. Monroe Construction Co.*, 63 N.C. App. 605, 611, 306 S.E.2d

519, 523 (1983), *disc. rev. denied,* 310 N.C. 154, 311 S.E.2d 294 (1984). Applying these standards, we hold that the trial court did not err in denying USG's motions for directed verdict and judgment notwithstanding the verdict as to Rowan's claims of fraud and misrepresentation as to South Rowan High School.

The essential elements of fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry,* 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (quoting *Ragsdale v. Kennedy,* 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974) ); *accord Cofield v. Griffin,* 238 N.C. 377, 379, 78 S.E.2d 131, 133 (1953). USG focuses on the fourth element of fraud, reliance, and argues that because Rowan failed to identify a specific representation upon which it relied in selecting Audicote to be installed in South Rowan High School, Rowan failed to prove this element.

There is a requirement of specificity as to the element of a representation made by the alleged defrauder. " 'The representation must be definite and specific . . . .' " *Johnson v. Owens,* 263 N.C. 754, 756, 140 S.E.2d 311, 313 (1965) (quoting *Berwer v. Insurance Co.,* 214 N.C. 554, 557, 200 S.E. 1, 3 (1938) ); *accord Ragsdale,* 286 N.C. at 139, 209 S.E.2d at 500; *New Bern v. White,* 251 N.C. 65, 68, 110 S.E.2d 446, 448 (1959). Requiring proof of a specific representation facilitates courts in distinguishing mere puffing, guesses, or assertions of opinions from representations of material facts. *See Ragsdale,* 286 N.C. at 139, 209 S.E.2d at 500-01 (discusses specificity requirement in context of evaluating whether defendant's representations that a corporation was a "gold mine" "were intended and received as mere expression of opinion or as statements of a material fact"); *Warfield v. Hicks,* 91 N.C. App. 1, 8, 370 S.E.2d 689, 692, *disc. rev. denied,* 323 N.C. 629, 374 S.E.2d 602 (1988) (defendant's "general unspecific statement of opinion about the potential consequences of using beetle infested beams" did not constitute misrepresentation).

Rowan presented evidence of specific representations made by USG about its product Audicote. In its trade literature, USG heavily promoted Audicote as suitable for use in schools. In its sales brochures of the 1950's, USG touted Audicote as having "exceptional bonding ability," "exceptional adhesive qualities," and as "ideal for ceilings in schools." At the same time USG was promoting

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

Audicote for its bonding abilities, internal USG memoranda from the 1950's reveal that USG was aware that Audicote had a sifting or dusting problem. A January 1956 memorandum addressed to "all architect representatives" evaluated Audicote as follows: "Structurally this material has the least guts [compared to Sabinite and Hi-lite] and it is possible to have fine sifting from slight surface abrasion or vibration." A 12 April 1957 internal document responding to numerous dusting complaints recommended that Audicote should not be promoted for locations where "freedom from dust is crucially important." That same document recommended that "[c]are should be exercised in the promotion of acoustical plasters where dusting may be detrimental to the use of a building or equipment within the building." An internal document dated 21 April 1958 states that since the introduction (the summer before) of USG's new formula substituting asbestos for paper fiber, USG had received complaints about "fissuring and blistering and white spots and streaks," which caused the author of the document to "wonder whether we have the ultimate in product composition and performance." Despite the existence of such internal documents, USG's sales brochures continued to promote Audicote's bonding abilities and did not mention the dusting problems. Neither did the brochures discuss potential health hazards of asbestos, of which USG was aware.

Rowan thus clearly presented evidence in support of the first element of fraud—the existence of a "false representation or concealment of a material fact." *Ragsdale*, 286 N.C. at 138, 209 S.E.2d at 500.

The question, however, is whether Rowan proved that it or its agents relied on the above representations in selecting Audicote for South Rowan High School. Testimony by deposition of the school's architect, Howard Bangle, constituted the main evidence supporting the reliance element. Bangle testified as follows:

Q. Mr. Bangle, what I would like for you to do is explain how you as an architect would determine which products to specify.

A. . . . I rely, as most architects do, on Sweet's, and I rely on manufacturers' representatives who call on you and explain their product. . . .

Q. In the course of your practice, would you have received sales information such as product brochures from U.S. Gypsum Company?

A. Oh, yes.

Q. Could you describe for us what the Sweet's catalog is and how it works?

A. Sweet's catalog is an architect's Bible . . . .

. . . .

These [volumes of Sweet's] contain basically all building products that an architect will use, and from this he would — if he's going to use a product, he goes to Sweet's, looks it up, looks at the competitors, their presentations, and he pretty much uses this in the writing of his specifications as guides and outlines.

. . . .

Q. In the course of your architectural practice, did you use the Sweet's catalogs on a routine basis?

A. Of course.

Q. Can you tell me whether or not it was your practice to rely upon the information contained in Sweet's catalog?

A. Yes.

Q. Can you tell me whether or not it was your practice to rely upon product literature and information submitted by manufacturers?

A. Yes, but this is pretty much taken from Sweet's. What's in Sweet's a manufacturer's rep will come around and give you some additional copies, which you usually use because it's not so burdensome and heavy and hard to handle like your Sweet's catalogs are. Your Sweet's catalogs are somewhat like you see behind a lawyer's desk, huge volumes of books that you have to refer to but you avoid as much as possible if you have the literature in a smaller, more compact method.

Q. Okay. Can you tell me whether or not it was standard practice during the time you worked as an architect for ar-

chitects to rely on Sweet's catalogs and manufacturers' product literature for information?

A. I don't know of any architect that didn't.

Q. Did you believe the information contained in Sweet's catalog accurately described the quality of the product?

A. Yes.

Q. Did you believe the information contained in the manufacturers' brochures and literature accurately described the quality of the product?

A. Yes.

Q. Did you rely on the manufacturer to tell you about the qualities and [properties] of its products?

A. Yes.

Bangle further testified that neither USG's trade literature nor its representatives had ever informed him that Audicote had problems of dusting, blistering, shrinking, and sifting or that it contained a potentially hazardous ingredient, all of which would have been material to Bangle. When asked whether he would have included Audicote in his specifications for South Rowan if he had known of the complaints and problem properties of the product, Bangle unequivocally answered "[n]o." USG's attorney attempted to soften the impact of that answer with the following question:

Q. And if you had been told by a Gypsum representative that, yes, we've had some problems with Audicote, but we are implementing formula changes which we believe will correct those problems, you would not have been concerned about using the product then, would you?

Bangle responded:

A. Well, a caution flag would certainly go up. I would be more apt to keep an eye on that product. I would have some hesitancy to use it until I was convinced that whatever the problem was had been taken care of.

When USG's attorney suggested to Bangle that he relied on his own experience with the product rather than on USG's promotional material, Bangle responded that "[i]t's a combination of both," and

that he "put a lot of stock in manufacturers' literature, but . . . also went with [his] experience."

USG contends that because Bangle never identified a specific representation by USG upon which he relied, Rowan failed to prove the reliance element of fraud. While Bangle did not speak of any specific representation, advertisement, or brochure that he had read thirty years before upon which he then relied, we know from USG itself that it specifically targeted architect-clients, directly and through Sweet's, with its promotional literature. USG acknowledged that Sweet's is the source which "an architect would then refer to in specifying products for installation within a building design that he is providing." USG further acknowledged that its brochures were placed in Sweet's during the pertinent years. This Court has recognized that "proof of circumstances from which the jury may reasonably infer the fact is sufficient" in proving the element of reliance. *Grace v. Strickland*, 188 N.C. 369, 374, 124 S.E. 856, 858 (1924).

We hold that because the agent of Rowan responsible for ordering Audicote for installation in South Rowan High School testified that he relied on Sweet's in drawing up the specifications for that school, and USG acknowledged that its promotional literature was placed in Sweet's at that time, a jury reasonably could find that Bangle relied on the literature and the representations in it about Audicote. *See In re Baby Boy Scamp*, 82 N.C. App. 606, 613, 347 S.E.2d 848, 852 (1986), *disc. rev. denied*, 318 N.C. 695, 351 S.E.2d 750 (1987).

[3] The second sub-issue of USG's fraud issue involves Rowan's fraudulent concealment claim for South Rowan. USG claims that Rowan failed to prove that USG had actual knowledge in the 1950's of any alleged danger posed by its acoustical plaster products as installed in buildings. "Petitioners whose cases come before this Court on discretionary review are limited by Rule 16 of the North Carolina Rules of Appellate Procedure to those questions they have presented in their briefs to the Court of Appeals." *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 467, 343 S.E.2d 174, 178 (1986). In its brief to the Court of Appeals, USG argued that "Rowan failed to meet its burden of proving (a) the existence of a specific representation; (b) reliance; and (c) any legal duty of U.S. Gypsum to disclose any information." In its petition for discretionary review in this Court, USG presented its fraud issue

as whether "plaintiff demonstrate[d] that he relied upon a definite and specific representation of the defendant in selecting the product at issue." In neither of these documents did USG present the argument it now raises. As a result, this issue is not properly before us, and we do not consider it.

[4]   The third sub-issue of USG's fraud issue concerns the punitive damage award of $1,000,000.00. This issue comes to us via Judge Greene's dissent. Judge Greene concurred in the majority's holding that the trial court did not err in denying USG's motions for directed verdict and judgment notwithstanding the verdict with regard to Rowan's fraud claim as to South Rowan. He differed, however, with the majority's holding that the trial court did not err in denying USG's motions regarding Granite Quarry Elementary School and East Rowan High School. Rowan did not offer testimony of any of those school's architects. Because Bangle was not involved in the construction of either school, Judge Greene would not accept, as sufficient evidence of reasonable reliance with regard to Granite Quarry and East Rowan, Bangle's statement that every architect he knew used Sweet's.

Despite the lack of legally sufficient evidence—as viewed by USG and Judge Greene—as to Granite Quarry and East Rowan, the jury found that USG defrauded Rowan with respect to those schools as well as South Rowan. The jury then awarded total punitive damages of $1,000,000.00. Judge Greene reasoned that because there is a substantial likelihood that some portion of that award was granted for the alleged Granite Quarry and East Rowan frauds, which claims he believed should have been dismissed, USG must receive a new trial on the issue of punitive damages related to the South Rowan fraud.

We need not decide whether the evidence regarding fraud as to Granite Quarry and East Rowan was legally sufficient because, under the verdict form agreed to by both parties and submitted to the jury, the jury's finding of fraud with respect to South Rowan was sufficient to support the entire punitive damages award. While drafting the verdict sheet, USG specifically requested that the jury indicate separately whether it found fraud with respect to each of the three schools. After reaching agreement on that detail, the court proposed that the punitive damages issue read as follows: "If the fifth issue [relating to the existence of fraud with respect to each of the three schools] or any part thereof is answered 'yes,'

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[332 N.C. 1 (1992)]

what amount of punitive damages, if any, is plaintiff entitled to recover of the defendant?" (Emphasis added). Counsel for both parties explicitly stated their agreement with the form of the verdict sheet with respect to punitive damages.

The jury returned a verdict in plaintiff's favor with respect to all issues, including specific findings of fraud with respect to each of the three schools. Regardless of whether the evidence was sufficient to support a finding of fraud with respect to Granite Quarry and East Rowan, under the agreed-upon wording of the jury verdict form the South Rowan fraud is sufficient to support the award of punitive damages. Because USG did not object to the verdict form, and indeed consented to it, it will not be heard to complain on appeal. N.C. R. App. P. 10(b); *see King v. Powell*, 220 N.C. 511, 513, 17 S.E.2d 659, 660 (1941) (lack of objection to jury's failure to answer certain issues on verdict form precluded appellate review); *Kim v. Professional Business Brokers*, 74 N.C. App. 48, 52, 328 S.E.2d 296, 299 (1985) (issue of separate damages not before appellate court where defendant's counsel recommended to trial court that only one damage issue be submitted to the jury); *Bennett v. Bennett*, 24 N.C. App. 680, 681, 211 S.E.2d 835, 836 (1975) (without having objected at trial, plaintiff may not appeal trial court's failure to submit tendered issues to the jury).

As its final issue, USG argues that the trial court erred in refusing to give the jury a "state of the art" instruction. In the absence of the instruction, USG argues that the jury was permitted to evaluate USG's conduct by 1990 standards rather than the standards at the time, 1950 to 1961. We conclude that discretionary review of this issue was improvidently allowed.

For the reasons stated, we affirm the Court of Appeals on the first two issues. We hold that review of the third issue was improvidently allowed.

Affirmed in part; discretionary review improvidently allowed in part.

Justice WEBB dissenting.

I dissent from the majority because I believe the plaintiff's claim is barred by the applicable statutes of limitation and repose. N.C.G.S. § 1-30 says:

The limitations prescribed by law apply to civil actions brought in the name of the State, or for its benefit, in the same manner as to actions by or for the benefit of private parties.

I do not see how the meaning of this statute could be more clear. It makes the statute of limitation and the statute of repose applicable to this case. Rather than interpret the fine reasoning of some previous cases, I would hold that the statute is clear and all cases inconsistent with this case are overruled.

As to the majority's reliance on inaction by the General Assembly, as evidence that it approves through its inaction the interpretation we have given the statute, I can only quote this Court in *DiDonato v. Wortman*, 320 N.C. 423, 425, 358 S.E.2d 489, 490 (1987), in which we said:

We must be leery, however, of inferring legislative approval of appellate court decisions from what is really legislative silence. "Legislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." . . . We cannot assume that our legislators spend their time poring over appellate decisions so as not to miss one they might wish to correct.

I vote to reverse the Court of Appeals and remand this case with an order that it be dismissed.