Brewer v. Grue, 2020 NCBC 59.

STATE OF NORTH CAROLINA

UNION COUNTY

CRAIG BREWER,

Plaintiff,

v.

JOHN A. GRUE; DAVID SEAN
GRUE; and DONALD G. COREY,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 3259

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO
ENFORCE SETTLEMENT
AGREEMENT**

1. This lawsuit arises out of a dispute between the shareholders of Whispering Pines Sportswear, Inc. ("Whispering Pines"). Defendants contend that the parties have reached a valid settlement agreement and now move to enforce that agreement. (*See* ECF No. 22.) For the following reasons, the Court **GRANTS** the motion.

*Hemmings & Stephens, PLLC, by Aaron C. Hemmings, for Plaintiff Craig Brewer.*

*James, McElroy & Diehl, P.A., by Jennifer M. Houti, for Defendants John A. Grue, David Sean Grue, and Donald G. Corey.*

Conrad, Judge.

I.
BACKGROUND

2. Whispering Pines is a South Carolina corporation. Its three equal shareholders—Craig Brewer, John Grue, and Don Corey—have a history of mistrust. In 2002, Brewer accused Grue and Corey of using company funds to pay their personal legal expenses, putting nonemployees on the payroll, and adopting other questionable business practices. (*See* Am. Compl. ¶¶ 14, 15, ECF No. 12.) They settled that dispute the next year. Without admitting liability, Grue and Corey

agreed to implement various corporate reforms and not to pay their legal bills out of the company coffers. (*See* Am. Compl. Ex. A ¶¶ 9, 26.)

3. The truce held until 2018, when Brewer filed this suit. This time around, Brewer alleges a mix of self-dealing and phony accounting. One issue relates to loans that each shareholder made to Whispering Pines. Although the loans have identical terms, Grue and Corey allegedly arranged a more favorable repayment for themselves. (*See* Am. Compl. ¶¶ 33, 35–37.) Another issue relates to how Whispering Pines values each shareholder's interest. Brewer alleges that Grue and Corey—with help from the company's Secretary (Grue's son, Sean)—doctored accounting records in a way that increased the value of their interests. (*See* Am. Compl. ¶¶ 25–27, 29, 30.) There are also echoes of past disputes, including allegations that Grue and Corey are once again paying their lawyers with company funds. (*See* Am. Compl. ¶¶ 48, 49, 56.) At first, Brewer sought to dissolve Whispering Pines, but he abandoned that effort in favor of asserting claims for breach of contract and breach of fiduciary duty against Grue, Corey, and Sean.

4. As the end of discovery neared, the parties began discussing a settlement in which Brewer would take sole control of Whispering Pines. During the negotiations, Brewer asked for and received various documents, including financial statements and payroll registers. (*See* Aff. D. Corey ¶¶ 7, 11, ECF No. 23; Aff. Brewer Ex. 1, ECF No. 29.) The payroll registers list Corey's son, Brian, as an employee, reporting a small salary and withholdings. (*See* Aff. D. Corey ¶ 11; Aff. Brewer Ex. 1.) Brewer insists that Brian is not actually an employee. (*See* Aff. Brewer ¶ 6.)

Concerned that dishonest employment practices might lead to adverse action by the government, Brewer requested an indemnification provision as part of the settlement. (*See* Aff. D. Corey ¶ 12.)

5. The parties finalized their settlement agreement in January 2020. (*See* Aff. D. Corey ¶ 14; Aff. Brewer ¶ 5; Settlement Agrmt., ECF No. 23.1.) As part of the settlement, Brewer agreed to purchase all shares of Whispering Pines owned by Grue and Corey for nearly $800,000. (*See* Settlement Agrmt. ¶ 2.a.) He also agreed to purchase their interests in another company called GCBP; this second transaction was contingent on a real estate deal between GCBP and a third party, which closed in early March 2020. (*See* Settlement Agrmt. ¶ 3; Aff. D. Corey ¶ 19.)

6. The parties deferred closing on the Whispering Pines share purchase for a short time so that Grue and Corey could first obtain releases from guarantees they had given for company debt. (*See* Settlement Agrmt. ¶¶ 2.b, 2.c.) Closing was set to take place within ten days of receiving those releases from the bank. (*See* Settlement Agrmt. ¶ 2.c.) Discussions with the bank took longer than the parties expected, stretching into March 2020. (*See* Aff. D. Corey ¶¶ 25, 26.) In the meantime, Brewer asked for another payroll register and a list of each employee's insurance benefits. (*See* Aff. Brewer Ex. 2.) The information given by Defendants showed, among other things, that Whispering Pines paid over $1,800 per month in health, dental, and life insurance benefits for Brian. (*See* Aff. Brewer Ex. 2.) At some point, Brewer also obtained copies of two checks, totaling $30,000, from Whispering Pines to Defendants' lawyers in 2019. (*See* Aff. Brewer Ex. 3.)

7. When the bank agreed to release Grue and Corey from their guarantees a few weeks later, Brewer gave notice that he was terminating the settlement agreement. (*See* Aff. D. Corey Ex. C, ECF No. 23.3.) Brewer stated, first, that the bank had taken more than thirty days to approve the releases (though the settlement agreement does not allow him to terminate it for that reason). (*See* Aff. D. Corey Ex. C; Settlement Agrmt. ¶ 2.b.) Brewer also stated that, "among other reasons for this termination, during the due diligence period, I've learned that you have maintained Brian Corey on the company's payroll and paid for health and dental insurance for a period of five years after the termination of his employment," which he described as a violation of state and federal law. (Aff. D. Corey Ex. C.) And he made clear that he would "not be closing on the Stock Purchase Agreement." (Aff. D. Corey Ex. C (emphasis omitted).)

8. Defendants have now moved to enforce the settlement agreement. (*See* ECF No. 22.) The motion has been fully briefed, and the Court held a hearing on August 10, 2020, at which all parties were represented by counsel. The motion is ripe for determination.

## II.
## ANALYSIS

9. "A party seeking enforcement of a settlement agreement may seek specific performance of that agreement by petition or motion in the original action." *Bell v. Pine Needles Country Club, Inc.*, 2019 NCBC LEXIS 27, at *8 (N.C. Super. Ct. Apr. 23, 2019). The Court treats a motion to enforce as a motion for summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *See Hardin*

*v. KCS Int'l, Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009). Summary judgment is appropriate if the evidence of record "show[s] that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. 56(c).

10. Here, it is undisputed that the parties entered into a settlement in January 2020 and reached agreement as to all material terms. (*See* Br. in Supp. 2–3, ECF No. 26; Opp'n 3, ECF No. 29.) The only question is whether that agreement is enforceable. Brewer argues that it isn't because Defendants fraudulently misrepresented or concealed material facts during their negotiations, namely that Whispering Pines paid for Brian's insurance benefits and that Defendants used company funds to pay their legal expenses. (*See* Opp'n 6–7.)

11. Fraud has five "essential elements": (a) a false representation or concealment of a material fact; (b) that was calculated to deceive; (c) that was made with intent to deceive; (d) that did in fact deceive; and (e) that resulted in damage to the injured party. *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992). The injured party's reliance on the misrepresentation or concealment must be reasonable. Reliance is not reasonable when the party "could have discovered the truth of the matter through reasonable diligence, but failed to investigate." *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 26, 581 S.E.2d 452, 458 (2003).

12. Defendants contend that they made no misrepresentations and did not conceal any material facts. They point to unrebutted evidence that Brewer received

all the information that he requested during negotiations, including company payroll registers. (*See* Br. in Supp. 11–12; Reply Br. 3–4, ECF No. 30.) Anything Brewer did not discover, they contend, was due to his own failure to investigate, not to any concealment. (*See* Reply Br. 6–7.)

13. Although not entirely clear, Brewer seems to argue that the payroll register he received in November 2019 contains a misrepresentation of fact. It does not. The document shows that Whispering Pines deducts $11.53 per month from Brian's salary to fund his FSA Medical account (commonly known as a flex spending account). (*See* Aff. Brewer Ex. 1.) During the hearing, Brewer's counsel questioned whether this figure is false because it is a fraction of the $1,800 per month that Brian receives in insurance benefits. This confuses not only withholdings and payments but also spending accounts and insurance premiums. Whispering Pines holds back $11.53 from Brian's salary as his contribution to a flex spending account; it also pays $1,800 or so in monthly premiums for health, dental, and life insurance on his behalf. Because the two figures have nothing to do with one another, Defendants did not misrepresent how much the company paid for insurance by truthfully reporting how much Brian paid to fund his FSA Medical account.

14. Even so, Brewer argues that Defendants should have disclosed Brian's insurance benefits anyway and that their failure to do so was fraudulent. "When a fraud claim is based on a party's failure to disclose a material fact, the party accused of fraud must have had a duty to speak or have taken steps to actively conceal facts." *Chesson v. Rives*, 2016 NCBC LEXIS 92, at *15 (N.C. Super. Ct. Nov. 30, 2016). A

duty to speak exists when the parties are in a fiduciary relationship, one party has affirmatively concealed information from the other, or "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton v. Harton*, 81 N.C. App. 295, 297–98, 344 S.E.2d 117, 119 (1986).

15. Establishing a duty to speak is a tall order when the negotiations relate to ongoing litigation. Our Court of Appeals has stressed that "a party in the 'adversarial setting' of settlement negotiations does not 'have an affirmative duty to disclose unfavorable facts.'" *Hardin*, 199 N.C. App. at 697–98, 682 S.E.2d at 734 (quoting *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 584, 581 S.E.2d 68, 73 (2003)). Indeed, an affirmative disclosure requirement would discourage settlement and conflict with the arms' length nature of the transaction. *See id.* at 697, 682 S.E.2d at 734.

16. Brewer's opposition brief says nothing about the duty to speak. (*See* Opp'n 6–7.) Although his counsel addressed the matter for the first time at the hearing, his theories remain hazy. It is not clear, for example, whether Brewer contends that Defendants had a duty to speak because the parties are in a fiduciary relationship. The amended complaint alleges that Grue and Corey owed Brewer a fiduciary duty, (*see* Am. Compl. ¶¶ 69, 70), but he has not offered evidence to support it. Regardless, the filing of this lawsuit made the parties adversaries and extinguished any fiduciary relationship that might have existed, at least for purposes of settlement negotiations. *See, e.g.*, *Piedmont Inst. of Pain Mgmt.*, 157 N.C. App. at 583–84, 581 S.E.2d at 72–

73; *Preiss v. Wine & Design Franchise, LLC*, 2018 NCBC LEXIS 99, at \*22–23 (N.C. Super. Ct. Sept. 24, 2018) (collecting cases).

17.     Nor has Brewer offered evidence of affirmative concealment.  When Brewer requested "a complete payroll register for the last two pay periods" in November 2019, Defendants gave him exactly what he asked for.  (Aff. Brewer Ex. 1.)  When Brewer asked to see "what we [*i.e.*, Whispering Pines] pay and what the employee pays" for insurance benefits in March 2020, Defendants gave him that too.  (Aff. Brewer Ex. 2.)  This is evidence of cooperation, not concealment.  Brewer chose to sign the agreement first and ask for a breakdown of insurance benefits later.  He has not shown that Defendants hid that information or that they had any obligation to disclose it absent a request.

18.     As Defendants contend, Brewer could have learned all about the company's insurance coverage before signing the settlement agreement had he exercised reasonable diligence.  Brewer had all the tools of modern civil discovery available to him.  *See Hardin*, 199 N.C. App. at 698, 682 S.E.2d at 734.  In addition, his position as president of Whispering Pines gave him presumptive access to company records.  Although Brewer alleges in the amended complaint that some records were kept from him in the past, (*see* Am. Compl. ¶ 20), he has not offered evidence of concealment.  Rather, Brewer warranted in the settlement agreement "that he has had ample time and opportunity to examine the books, records and operations of each company, and is familiar with the same."  (Settlement Agrmt. ¶ 4.)  Even construing the evidence

in a light most favorable to Brewer, he could have learned of any supposed latent defect through the exercise of reasonable diligence.

19. The same is true for Brewer's allegation that Defendants concealed their use of company funds to pay personal legal expenses. Brewer devotes a single sentence to this argument in his opposition brief, again making no reference to Defendants' duty to disclose the information. (*See* Opp'n 6–7.) Without question, Brewer had notice of Defendants' alleged use of corporate funds for personal legal expenses—it has been a sore spot between these parties for nearly twenty years and is one of Brewer's affirmative claims for relief in this case. (*See* Am. Compl. ¶ 56.) Yet Brewer offers no evidence that he investigated his allegations through discovery, that Defendants refused to provide discovery, or that Defendants otherwise actively concealed the facts.

20. In short, the evidence and arguments presented by Brewer do not create a genuine issue of material fact as to whether the settlement agreement was a product of fraud. The Court therefore concludes that Defendants are entitled to "a judgment in accordance with the terms found in the settlement agreement." *Bell*, 2019 NCBC LEXIS 27, at *8.

### III.
### CONCLUSION

21. For these reasons, the Court **GRANTS** Defendants' motion.

22. The Court **ORDERS** that Brewer shall comply with the parties' January 2020 settlement agreement, which is attached as Exhibit A to the Affidavit of Donald G. Corey (ECF No. 23.1). The Court intends to close this case upon receiving the

parties' stipulation of dismissal, as stated in paragraph 1.b. of the settlement agreement.

      **SO ORDERED**, this the 28th day of August, 2020.

                      /s/ Adam M. Conrad
                      Adam M. Conrad
                      Special Superior Court Judge
                        for Complex Business Cases