**ANDERSON COUNTY BOARD OF EDUCATION, Plaintiff-Appellant,**

v.

**NATIONAL GYPSUM COMPANY and United States Gypsum Company, Defendants-Appellees.**

**No. 85–5474.**

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1986.

Decided June 5, 1987.

Rowland and Rowland, Knoxville, Tenn., Michael Y. Rowland (argued), for plaintiff-appellant.

Darryl G. Lowe (argued), Erma G. Greenwood, Knoxville, Tenn., for defendants-appellees.

Lawrence T. Hoyle, Jr., Richard M. Bernstein (argued), Philadelphia, Pa., for National Gypsum.

Before KEITH, NELSON and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

The Anderson County Board of Education ("the Board") installed asbestos ceiling material manufactured by defendants in the ceilings of its schools constructed in 1967. In 1983, the Board became concerned about the asbestos ceilings, removed them, and sued defendants for the cost of removal and replacement and other damages. After a trial on theories of negligence, strict liability, misrepresentation and fraud, a jury found for the defendants on all counts. Before trial, a count based on a warranty theory was dismissed because the Tennessee four-year statute of limitations had run (Tenn.Code Ann. § 47–2–725) (1979). Plaintiff attacks this ruling, and a ruling excluding from evidence documents concerning National Gypsum's state of mind in 1976 and 1978. We AFFIRM.

I

Around 1967, the Anderson County Board of Education constructed two high schools. "Sprayolite" and "Audicote," products of the defendants-appellees National Gypsum Company and United States Gypsum Company, respectively, were applied to the ceilings of the schools; the products contain asbestos.

In 1983, the Board, upon the recommendation of various government agencies and

consultants, had the ceiling material (and the carpets) at the schools removed and replaced. The Board subsequently filed this action in the Circuit Court for Anderson County, Tennessee, seeking the cost of removal and replacement, and punitive damages. The action alleged causes of action in breach of warranty, negligence, strict liability in tort, fraud and misrepresentation, and a claim for punitive damages. The action was removed to the United States District Court for the Eastern District of Tennessee. By consent of the parties, all matters in the case were dealt with by United States Magistrate Robert Murrian. The defendants moved to dismiss the complaint as to all causes of action. The motion was granted with respect to the Board's claim of breach of warranty because, the magistrate ruled, the claim was barred by Tennessee's four-year statute of limitations applicable to warranty actions under the Uniform Commercial Code. Tenn.Code Ann. 47–2–725 (1979).

The remaining causes of action were subsequently tried and the jury found for the defendants on all counts. During the course of the trial, the Board attempted to introduce into evidence three internal memoranda of National Gypsum, dated 1976 and 1978, relating to a company policy discouraging the use of asbestos products in the workplace at National Gypsum. The magistrate excluded the memoranda from evidence.

## II

■ The first issue before us is whether the Board is exempt from the statute of limitations. The common law rule, enacted into positive law in Tenn.Code Ann. § 28–1–113 (1980), is that the statute of limitations does not operate to bar suits brought by the sovereign. The issue in this case is the extent to which the Board participates in the immunity of the state.

The "immunity" to the operation of the statute of limitations in this case is not the conventional immunity of the sovereign to suits brought against it. Instead, this immunity operates to leave open forever the ability of the state (and of such state agencies as the University of Tennessee, *Dunn v. W.F. Jameson & Sons, Inc.*, 569 S.W.2d 799 (Tenn.1978)) to sue on any cause of action.

The reason for the rule has been stated as being to ensure "that the public should not suffer because of the negligence of its officers and agents...." *City of Shelbyville v. Shelbyville Restorium, Inc.*, 96 Ill.2d 457, 71 Ill.Dec. 720, 722, 451 N.E.2d 874, 876 (1983) (quoting *State ex rel. Board of University School Lands v. Andrus*, 671 F.2d 271, 274 (8th Cir.1982)). However, it has never been the law that all subordinate organs of the state have the full scope of immunity that the state does. In Tennessee, the rule has been stated that the statute does not run when the case rests on "a demand arising out of, or dependent upon, the exercise of governmental functions as an arm of the state, ... [but] the statute does run against a county or municipality in respect of its claims or rights which are of a private or corporate nature and in which only its local citizens are interested, as distinguished from [those] in which all the people of the state are interested." *Jennings v. Davidson Co.*, 208 Tenn. 134, 344 S.W.2d 359, 361–62 (1961) (quoting *Wood v. Cannon Co.*, 25 Tenn.App. 600, 603, 166 S.W.2d 399, 401 (1942)).

The Tennessee cases do not give the clearest guidance directed to our specific situation. There is no one definition of "governmental function" applicable to all situations. Based on our review of Tennessee law, however, we hold that the immunity does not extend to every action of a subordinate body such as a county, municipality, or school board, even when it can be characterized as acting "in furtherance of a state function." There must be some direct nexus between the action complained of and the state function. Where, as in this case, the subordinate body is primarily involved in normal commercial activity not inextricably connected to the state function, nor to state rules, regulations, or commands pertaining to that function, the subordinate body does not thereby acquire immunity from the statute of limitations in

bringing suit. We recognize the matter is not free from doubt, and further recognize that the State of Tennessee may alter or clarify this situation. *Cf. Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945).

Nonetheless, our best reading of how Tennessee would interpret its law is in accordance with the holding of the district court.

### III

Tennessee courts have found subordinate bodies to be immune from the statute of limitations because of the functions they were performing. In two cases, the county was recovering for payments made for personal services in caring for the ill or infirm, in effect requiring the discharge of a debt owed as a matter of citizenship rather than of normal commercial transaction. The existence of these obligations of the county was specifically laid down by state statute. *Central Hospital for Insane v. Adams*, 134 Tenn. 429, 183 S.W. 1032 (1916); *Jennings v. Davidson Co.*, 208 Tenn. 134, 344 S.W.2d 359, 361 (1961). In at least two cases, subordinate bodies were found to have no immunity when attempting to enforce claims that would merely enrich the local county coffers to no particular state benefit. *City of Knoxville v. Gervin*, 169 Tenn. 532, 89 S.W.2d 348, 351 (1936); *Wood v. Cannon Co.*, 25 Tenn.App. 600, 603, 166 S.W.2d 399, 401 (1942).

We recognize that the distinctions discussed in these cases are not totally compelling. On the one hand, it is clear that any activity of a subordinate government can legitimately be called a state function. Indeed, a subordinate body cannot function except in accordance with grants of powers by the state. *Cf. Reed v. Rhea County*, 189 Tenn. 247, 225 S.W.2d 49, 51 (1949). Thus, a blind adherence to the "state function" analysis would vitiate the "private or corporate nature" exception, expressed in *Jennings*, 344 S.W.2d at 362.

On the other hand, the cases do not consistently follow a distinction between instances where the money sought to be recovered would flow ultimately only to the county and its taxpayers as opposed to flowing to the state and its taxpayers. *See Nelson v. Loudon Co.*, 176 Tenn. 632, 144 S.W.2d 791, 792 (1940). Taken as a whole, however, the cases can be read to require that some state interest recognized by state legislation must be at stake beyond that of simply having more money in the hands of a subordinate body.

In our case, there is no such broader interest of state government that was substantially promoted. The state did not mandate, prevent or affect the type of roofing to be purchased. *See Dunn v. W.F. Jameson and Sons, Inc.*, 569 S.W.2d 799, 801 n. 13 (Tenn.1978). Whether the roofing should be replaced or not was not the subject of any state mandate. No state monies are substantially affected, whether the roofing was or was not replaced, and whether this suit is successful or not successful. The state formula for allocation of funds to counties does not depend on the financial status of the county as reflected by whether it is successful in this suit or any other suit for money damages.

Under these circumstances, we do not believe that the rule barring application of the statute of limitations, which is valid for the State of Tennessee, should be extended to each and every commercial transaction of a subordinate body of the state, no matter how tenuous the link with state purposes.

Where the actual activity which is the basis of the suit is not a necessary part of carrying out a state function, then the action is of a private or corporate nature to the locality, and subject to the statute of limitations. It would seem most odd if a merchant selling paper clips or hot dog rolls could plead the statute of limitations when sued by the county administrative office or the county road department, but not when sued by the county school board. We do not believe the rubric of "state function" need reach so far.

The most recent Tennessee cases do not shed clear light on this issue but certainly do not contradict our holding. *Dunn v. W.F. Jameson and Sons, Inc.*, 569 S.W.2d

799 (Tenn.1978), held that a claim was not time-barred when based on a contract made by the Regents of the state university, a group which is clearly a direct arm of the state, not a subordinate body such as a county or municipality.

The Tennessee Court of Appeals, in the unpublished opinion of *City of Knoxville v. Celotex Corp.*, Case No. C.A. 573 (Dec. 30, 1983), confronted a similar issue and found that immunity to the statute of limitations did not apply. While this case has no precedential value in Tennessee courts, it is certainly an indication that a Tennessee court, with the question squarely before it, did not find it obvious that the immunity would apply.

Because of a flurry of asbestos litigation in the eastern part of Tennessee, this issue has been addressed a number of times in the court below. United States Magistrate Murrian has consistently held that the State's immunity does not extend to subordinate bodies in this type of action. *Loudon County v. United States Gypsum Co.*, Case No. CIV 3–83–329 (E.D.Tenn. Oct. 5, 1983); *Johnson County v. United States Gypsum Co*, 580 F.Supp. 284 (E.D.Tenn. 1984). Judge Hull initially upheld such rulings, although it appears in a more recent opinion that he may have changed his mind. *Johnson County v. United States Gypsum,* —— F.Supp. ——, Case No. CIV 2–83–262 (E.D.Tenn. Sept. 26, 1985).

*Kelley v. Metropolitan County Bd. of Educ.*, 615 F.Supp. 1139 (M.D.Tenn.1985), which the appellants submitted after the arguments were concluded, is not to the contrary. There the district court held a municipality was not barred by the statute of limitations in a civil rights case on the ground that it was acting as an arm of the state government in carrying out its specifically educational policies. Indeed, the learned chief judge of the United States District Court for the Middle District of Tennessee carefully distinguished "matters of curriculum, funding, teacher qualifications and compensation, and other academic considerations," calling them "state concerns." 615 F.Supp. at 1152. On the other hand, he noted that "maintenance of the physical structure and land of county schools is a local concern and function." *Ibid.* We agree. Based on the analysis presented in this decision, we find the result reached below in this case to be the sounder one, and we correspondingly AFFIRM.

## IV

■ Plaintiff's second claim is not so troublesome. The excluded evidence consisted of memoranda of National Gypsum officials recommending against the internal use of certain asbestos containing materials in National Gypsum operations. The district court did not abuse its discretion in refusing to admit these documents. They are clearly irrelevant to National's *state of mind* in 1967, relating only to conditions a decade later. *Vroman v. Sears Roebuck & Co.*, 387 F.2d 732, 737–38 (6th Cir.1968); *Christner v. E.W. Bliss Co.*, 524 F.Supp. 1122, 1125 (M.D.Pa.1981). They are no more relevant to the *quality* of the ceiling materials involved. They do not relate directly to those materials, and are certainly only peripheral to the masses of direct testimony introduced on the issue of the quality of the ceiling material. The court below was well within the bounds of its discretion, and we AFFIRM.