**HAMILTON COUNTY BOARD OF EDUCATION, Plaintiff–Petitioner,**

v.

**ASBESTOSPRAY CORPORATION, National Gypsum Company, and W.R. Grace & Co.–Conn., Defendants–Respondents.**

Supreme Court of Tennessee,
at Nashville.

Oct. 23, 1995.

As Clarified on Rehearing Nov. 20, 1995.

Jerry H. Summers, Summers, McCrea &
Wyatt, Chattanooga, W. Ward Crutchfield,
Crutchfield, Benson & Pope, Chattanooga,
Edward J. Westbrook, Frederick J. Jekel,
Ness, Motley, Loadholt, Richardson & Poole,
Charleston, South Carolina, E. Pete Kulmala,
Lewis, Babcock & Hawkins, Columbia, South
Carolina, for Plaintiff–Petitioner.

Robert L. Crossley, Anthony M. Iannacio,
Katherine A. Brown, Vance L. Broemel, Bak-
er, Donelson, Bearman & Caldwell, Nash-
ville, for Defendant–Respondent W.R. Grace.

DROWOTA, Justice.

### QUESTIONS CERTIFIED

In this suit brought by the Hamilton Coun-
ty Board of Education (the Board) in federal
court to recover the cost of asbestos removal
from its school buildings, the United States
Court of Appeals for the Sixth Circuit certi-
fies the following questions, pursuant to Rule
23 of the Rules of the Supreme Court of
Tennessee, for our determination:

(1) Whether the doctrine of *nullum tem-
pus occurrit regi*, as codified in Tenn.Code
Ann. § 28–1–113, renders the Board im-
mune from the expiration of the three year
statutory period of limitation otherwise ap-
plicable to this case;

(2) Alternatively, whether Tennessee law
provides for the tolling of the statute of
limitations for the period during which the
Board participated in a class action filed in
a federal forum in another state.

Because we answer the first question in
the affirmative, we decline to answer the
second certified question.

### FACTUAL AND PROCEDURAL HISTORY

The facts of this case, which we glean from
the Sixth Circuit's certification order, are as
follows. At some undisclosed time, Hamilton
County insulated a number of school build-
ings that it owned with sprays containing
asbestos. In 1980, the Tennessee Depart-
ment of Education, as part of a statewide
"asbestos in schools program," investigated
the Hamilton County schools and found as-
bestos in 21 of those schools. Subsequently,
in 1983, Hamilton County hired Law Engi-
neering Corporation to survey its schools and
to determine the amount of asbestos therein;
this survey was undertaken in compliance
with regulations pertaining to asbestos pro-
mulgated by the Environmental Protection
Agency (EPA). Law Engineering recom-
mended the removal of asbestos-containing
material from a number of schools; and
Hamilton County began the removal process
in September 1984.

Meanwhile, a number of school districts
across the nation filed a national class action
on January 17, 1983, in a federal district
court in Pennsylvania, seeking the recovery
of asbestos abatement costs for their schools
(National Schools Class Action). The Board
received notice of this class action and there-
after considered itself part of the class. On
September 28, 1984, the district court certi-
fied the class, but the certification did not
become final until October 20, 1986. Howev-
er, for reasons that are undisclosed, the
Board opted out of this litigation on Decem-
ber 1, 1987.

On December 7, 1987, the Board filed a
tort action in the United States District
Court for the Eastern District of Tennessee,
based on diversity jurisdiction, for the recov-
ery of asbestos removal costs against several
defendants, including U.S. Gypsum Compa-
ny, and W.R. Grace & Company. In May
1989, U.S. Gypsum Company filed a motion
for summary judgment, arguing that Tennes-
see's three-year statutory period of limita-
tions applicable to injuries to personal and
real property, Tenn.Code Ann. § 28–3–105,
had expired. The Board countered by argu-
ing that Tennessee's *nullum tempus* doc-
trine, as codified at Tenn.Code Ann. § 28–1–

113, rendered the three-year limitations period inapplicable. Alternatively, the Board argued that the limitations period had been tolled during the time it participated in the federal class action.

The district court (Judge R. Allan Edgar) granted the motion in favor of U.S. Gypsum, and later made the ruling applicable to the other defendants. The Board appealed from this ruling to the Sixth Circuit, and that Court certified the above-mentioned questions to us.

### ANALYSIS

The common law doctrine of *nullum tempus occurit regi*, which is literally translated as "time does not run against the king," prevents an action brought by the State from being dismissed due to the expiration of the statutory period of limitations normally applicable to the specific type of action. This doctrine has been justified on the ground "that the public should not suffer because of the negligence of its officers and agents . . ." *State ex rel. Board of University & School Lands v. Andrus,* 671 F.2d 271, 274 (8th Cir.1982). Tennessee's version of this doctrine, found at § 28–1–113, provides as follows: "The provisions of this title [pertaining to statutes of limitation] do not apply to actions brought by the State of Tennessee, unless otherwise expressly provided." This doctrine is not to be lightly regarded, as we have repeatedly stated that statutes of limitation are looked upon with disfavor in actions brought by the State, and will not be enforced in the absence of clear and explicit statutory authority to do so. *Dunn v. W.F. Jameson & Sons, Inc.,* 569 S.W.2d 799, 802 (Tenn.1978); *Anderson v. Security Mills,* 175 Tenn. 197, 133 S.W.2d 478 (1939).

Moreover, it is settled that the *nullum tempus* doctrine applies, in certain cases, to subordinate organs of the state, such as counties or municipalities. The basic rule regarding the applicability of *nullum tempus* to actions brought by subordinate bodies is set forth in *Wood v. Cannon County,* 25 Tenn.App. 600, 166 S.W.2d 399 (1942), where we stated:

The statute of limitations does not run against the sovereign or the state, or against a county, when [the county is seeking] to enforce a demand arising out of, or dependent upon, the exercise of its governmental functions as an arm of the state. But the statute does run against a county or municipality in respect of its rights or claims which are of a private or corporate nature and in which only its local citizens are interested, as distinguished from a public or governmental matter in which all the people of the state are interested.

*Wood,* 166 S.W.2d at 401 [citations omitted]. *See also Jennings v. Davidson County,* 208 Tenn. 134, 344 S.W.2d 359, 361–362 (1961).

Here, in concluding that the doctrine of *nullum tempus* did not render the Board immune from the expiration of the limitations period, the district court relied exclusively upon *Anderson County Bd. of Educ. v. National Gypsum Co.,* 821 F.2d 1230 (6th Cir. 1987), a Sixth Circuit case in which a local Tennessee school board brought an action to recover the costs of replacing an asbestos-laden roof. In *Anderson County,* a three-judge panel of the Sixth Circuit surveyed the relevant Tennessee cases, and determined that in situations where the subordinate bodies brought the action to discharge obligations or mandates specifically set forth by state statute, *nullum tempus* was held to apply; but where the action was merely brought to increase the amount of money in the treasury of the subordinate body, *nullum tempus* was inapplicable. While conceding that "any activity of a subordinate government can be legitimately called a state function," *Anderson County,* 821 F.2d at 1233, the *Anderson County* court refused to accept such a broad definition: instead, it concluded that "some state interest recognized by state legislation must be at stake beyond that of simply having more money in the hands of the subordinate body." *Id.*

Having gleaned this rule from the cases, the Sixth Circuit proceeded to apply the rule to the facts before it, stating that:

In our case, there is no broader interest of state government that was substantially promoted. The state did not mandate, prevent or affect the type of roofing to be purchased. Whether the roofing should be

replaced or not was not the subject of any state mandate. No state monies are substantially affected, whether the roof was or was not replaced, and whether this suit is successful or not successful. The state formula for allocation of funds to counties does not depend on the financial status of the county as reflected by whether it is successful in this suit or any other suit for money damages.

*Id.*

The *Anderson County* court then summarized its holding as follows:

> Based on our review of Tennessee law ... we hold that the immunity does not extend to every action of a subordinate body such as a county, municipality, or school board, even when it can be characterized as acting 'in furtherance of a state function.' There must be a direct nexus between the action complained of and the state function. Where, as in this case, the subordinate body is primarily involved in normal commercial activity not inextricably connected to the state function, nor to state rules, regulations, or commands pertaining to that function, the subordinate body does not thereby acquire immunity from the statute of limitations in bringing suit. We recognize the matter is not free from doubt, and further recognize that the state of Tennessee may alter or clarify this position.

*Anderson County,* 821 F.2d at 1232–33.

■ With all due respect, we believe that the analysis employed by the *Anderson County* court is unduly restrictive. First, it is uncontroverted that the State of Tennessee has accepted, both in its constitution and statutory code, the duty of providing a free public education to its citizens. Tenn. Const. Art. XI, § 12; Tenn.Code Ann. § 49–1–1 *et seq.* Because of education's inclusion in both the fundamental law and legislation of this state, its provision is a quintessential governmental, not a private, function. *Applewhite*

*v. Memphis State University,* 495 S.W.2d 190 (Tenn.1973); *Leeper v. State,* 103 Tenn. 500, 53 S.W. 962 (1899). Furthermore, in *Dunn v. W.F. Jameson & Sons, Inc.,* 569 S.W.2d 799 (Tenn.1978), a case in which the Board of Regents of the State University and College System brought an action against numerous defendants to recover the cost of a defective building at Memphis State University, we stated that "there can be no doubt that the State, in entering into these contracts involved in this case through its agency (the plaintiff), was acting in furtherance of education. As education is a governmental function, the State was acting in its sovereign capacity in this instance." *Dunn,* 569 S.W.2d at 801. Therefore, it is clear that the repair or maintenance of school buildings, when undertaken by the state government, is a governmental function.

*Dunn* is of utmost importance here because, as is the case with many other aspects of education, the State has simply delegated its governmental function—in this instance that of maintaining school property—to subordinate bodies.[1] For example, Tenn.Code Ann. § 49–2–101(8) mandates that county legislative bodies "*shall* [l]evy such taxes or provide funds by bond issues by the voters for the purchase of school grounds, the erection *and repair of school buildings,* and for equipping the same ..." (emphasis added). Because this mandate to provide funds for the repair of school buildings obviously implies a duty to repair on the part of the subordinate body, we disagree with the Sixth Circuit's conclusion that an action to recover the costs of repairing a defective school building is a "normal commercial activity *not inextricably connected to the state function, nor to state rules, regulations, or commands relating to that function* ..." (emphasis added).[2]

The erroneous nature of this conclusion is particularly apparent in the context of the

---

1. Many instances can be cited where the State has delegated its powers to local bodies for the purpose of education. For example, Tenn.Code Ann. § 49–6–2001 empowers county and city boards of education to exercise the right of eminent domain to acquire property for public school purposes.

2. Indeed, we have flatly held, in a different context, that the maintenance of school buildings by a county board of education is a governmental function. *Reed v. Rhea County,* 189 Tenn. 247, 225 S.W.2d 49, 50 (1949).

specific "repair" at issue here—asbestos removal. As early as 1982, EPA promulgated a detailed rule concerning asbestos, which it summarized as follows:

> EPA issues this rule to reduce risks to human health from exposure to asbestos-containing material in school buildings. This rule requires public and private elementary and secondary schools in the United States to identify friable asbestos-containing materials, maintain records and notify employees of the location of the friable materials which contain asbestos.

40 C.F.R. Part 763 (1982).

To determine whether a school building contained friable asbestos, the rule required "each local education agency" to take samples of friable materials and have those samples analyzed. If those samples were found to contain significant amounts of asbestos, ameliorative action was required. Although the rule stated that "[m]any of the friable asbestos-containing materials do not require abatement or removal," it also stated that "[a]batement is often needed whenever the friable asbestos-containing material is visibly damaged and easily accessible or has inherently poor cohesive strength." *Id.*

This initial rule was followed by the Asbestos Hazard Emergency Response Act (AHERA), which Congress passed in 1986. 15 U.S.C. § 2641–2654. In this Act Congress declared that the existing EPA rule regarding asbestos in schools was not adequate to meet the problem, 15 U.S.C. § 2641; and it required the EPA to promulgate more detailed and specific rules for the inspection, identification, evaluation and treatment of asbestos-containing materials in schools. 15 U.S.C. § 2643. EPA responded to the Congressional mandate by issuing a new set of rules requiring, *inter alia*, that schools with substantial amounts of asbestos-containing material address the problem with "response actions" ranging from an approved management plan to outright removal, depending on the severity of the problem. 40 C.F.R. § 763.90 (1987). Schools failing to adhere to

these regulations faced the possibility of a civil penalty. 40 C.F.R. § 763.97.

These detailed federal statutes and regulations pertaining to asbestos, which are cast in mandatory language, make it clear that the Board was adhering to the commands of a body greater than itself in having dangerous asbestos-containing material removed from its schools and in seeking to recover the costs of this endeavor. Therefore, it was performing "governmental functions as an arm of the state" under the rule enunciated in *Wood* and *Jennings*. Moreover, this conclusion—that asbestos removal or abatement undertaken by a local body is a governmental function affecting the general public, rather than a purely local economic activity—is supported by an overwhelming majority of jurisdictions that have considered this issue. *See Rowan County Bd. of Educ. v. United States Gypsum Co.*, 332 N.C. 1, 418 S.E.2d 648, 655 (1992); *Board of Educ. v. A, C and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 656, 546 N.E.2d 580, 601 (1989); *Bellevue Sch. Dist. No. 405 v. Brazier Const. Co.*, 103 Wash.2d 111, 691 P.2d 178, 181–82 (1984) (en banc); *Mt. Lebanon Sch. Dist. v. W.R. Grace & Co.*, 414 Pa.Super. 455, 607 A.2d 756, 762 (1992); *Livingston Bd. of Educ. v. United States Gypsum Co.*, 249 N.J.Super. 498, 592 A.2d 653, 656–57 (1991); *District of Columbia v. Owens–Corning Fiberglas Corp.*, 572 A.2d 394, 406–410 (D.C.App.1990); *Unified Sch. Dist. No. 490 v. Celotex Corp.*, 6 Kan.App.2d 346, 629 P.2d 196, 203 (1981). In fact, our research has revealed no case that has either utilized the restrictive rationale employed by the Sixth Circuit or reached the result that it did.

## CONCLUSION

For the foregoing reasons, we conclude that a local school board engages in a "governmental function" when it brings an action to recover the cost of asbestos abatement or removal; therefore, the *nullum tempus* doctrine applies in this case.[3] Because our an-

---

3. A different judge in the Eastern District of Tennessee, Judge Thomas Hull, reached this same conclusion in *County of Johnson, Tennessee v. United States Gypsum Co.*, 664 F.Supp. 1127 (E.D.Tenn.1985), a case decided before *Anderson*

*County* was released. In so concluding, Judge Hull reversed his earlier ruling in *Johnson County v. U.S. Gypsum Co.*, 580 F.Supp. 284 (E.D.Tenn.1984), in which he had adopted the

swer to the first certified question obviates the need to answer the alternative query, we decline to answer the second certified question.

The Clerk will transmit this opinion in accordance with Rule 23, Section 8 of the Rules of the Supreme Court. The costs in this cause will be taxed to the Respondent, W.R. Grace & Co.—Conn.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.

## OPINION ON PETITION TO REHEAR

DROWOTA, Justice.

The defendant in this action, W.R. Grace & Co.–Conn., has filed a petition to rehear, asking that this Court clarify its previous opinion. Specifically, Grace requests that we disavow certain language in the opinion that, it says, can be interpreted as finding that (1) the asbestos-containing materials removed by Hamilton County were "dangerous," and (2) that removal of those materials was "mandatory" under the facts of this case. Grace does not ask that we alter the holding of the case in any way.

Grace's request is well taken. Our earlier opinion should not be construed as finding that the asbestos-containing materials removed from the Hamilton County schools were necessarily of a "dangerous" nature; or that removal of those materials was the appropriate "response action" in this situation. Rather, that opinion simply provided that when counties, in accordance with EPA regulations, undertake to remove asbestos-containing materials from school buildings, they are performing a governmental, as opposed to a proprietary, function. Therefore, the statutory period of limitations otherwise applicable to this tort action does not apply.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.

federal magistrate's recommendation that *nul-* *lum tempus* did not apply.