IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE



FILED

September 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| KNOX COUNTY, TENNESSEE, | ) | |
| EX REL., | ) | KNOX CHANCERY |
| THOMAS H. SCHUMPERT, | ) | |
| | ) | |
| Plaintiff/Appellee | ) | NO. 03A01-9803-CH-00089 |
| | ) | |
| v. | ) | |
| | ) | HON. SHARON BELL |
| PERCEPTICS CORPORATION, | ) | CHANCELLOR |
| a State of Tennessee Corporation, | ) | |
| and | ) | |
| NORTHROP GRUMMAN | ) | |
| CORPORATION, a State of | ) | |
| Delaware Corporation, | ) | |
| | ) | AFFIRMED and |
| Defendants/Appellant | ) | REMANDED |

Lawrence F. Giordano and Jason G. Wolfkill, Knoxville, for Appellant
    Perceptics Corporation.
John E. Owings and Mary Ann Stackhouse, Knoxville, for Appellee
    Knox County.

---

**O P I N I O N**

INMAN, Senior Judge

Knox County filed this action on July 30, 1997 for damages and initially raised three issues: (1) against Northrop Grumman Corporation for negligent repair or failure to repair a computer system sold to Knox County by its predecessor, Perceptics; (2) against Perceptics Corporation for breach of contract for delivery of an optical storage system and services (hereinafter "the system") for the Knox County Register of Deeds; and (3) against Perceptics for breach of service maintenance contracts for the years 1993, 1994, 1995 and 1996, by failing to provide a system that operated correctly and reliably.

**I**

The complaint alleges that on May 4, 1990, Knox County and Perceptics entered into a contract for services wherein Perceptics agreed to deliver an optical storage and retrieval

system and services for the Knox County Register of Deeds in accordance with the bid documents. It was contemplated that the services to be performed by Perceptics would be accomplished over a ten-month period ending March 1, 1991, with Knox County providing data, specifications approval and information to Perceptics for adaptation and testing of the software because Perceptics' performance was dependent upon the County's actions. Pursuant to the terms of the contract, the deliverable Perceptics software was proprietary and licensed to Knox County under a non-transferrable license restricting its use to the selected hardware and solely for use by the County.

The contract is entitled: "<u>Contract for Services</u>." In the Recitals, the contract provides:

> WHEREAS, Knox County requires a computer based, optical storage and retrieval system for the Knox County Register of Deeds office, and Knox County recognizes the need to establish such a system and therefore desires to take advantage of Perceptics software (*as modified specifically for Knox County's use),* hardware and *expertise* which will not only result in a savings to Knox County but will facilitate the storage and retrieval of the vital records contained within the Knox County Register of Deeds office, and
>
> WHEREAS, *Perceptics has experience in the design, installation, and maintenance of computer-based optical storage and retrieval systems,* and
>
> WHEREAS, Perceptics and Knox County are mutually desirous that Perceptics make available operational software systems, hardware, and maintenance on the terms contained in this agreement.
>
> \* \* \*
>
> It is estimated that **the services** to be performed by Perceptics hereunder shall be accomplished over a ten month period . . . . Data, specifications approval, and information required by Perceptics for adaptation and testing of the software will be provided by Knox County on a timely basis in a usable form, since Perceptics' **performance and delivery of tasks** is dependent upon availability of such actions.
>
> (Emphasis added.)

Paragraph V requires Perceptics to provide full maintenance of the system for twelve months, and changes for the following five (5) years are also governed by the contract.

Under "Software Update Addendum A," the contract provides:

> Perceptics Corporation shall supply software update *services* . . . . These *services* cover updates and support for software included with an integrated system provided by Perceptics . . . . Perceptics warrants that *services will be performed in a good workmanlike manner."* (Emphasis added.)

2

It is also provided that the warranty for services is "in lieu of all other warranties expressed or implied, including warranties of merchantability and fitness for a particular purpose."

Exhibit A to the contract, entitled "Proposed Solution," provides that a predominant part of this contract involves design by Perceptics to ensure that the needs of the Register of Deeds and the public are being met. Perceptics proposed a "phased approach to the *design* of a Document Image Management System for the Knox County Register of Deeds' office" . . . in order to provide "a cost-effective program for indexing, scanning and retrieval without disrupting existing operations . . . and . . . to fully automate the operation of the office for greatly improved efficiency for much better service to the public." In its contract for services Perceptics acknowledged that

> The information obtained from the operation of Phase I system will be very valuable in determining the final specifications for the Phase II expansion of the system. Analysis of the usage of the index and retrieval workstations will help to determine the total number of workstations to adequately serve the public and the Register's office when the imaging system is fully operational.

The contract requires the purchase of a license or "right to use" the software. The "right to use" the software is extended to Knox County under a "non-transferrable license restricting its use to the selected hardware and solely for use by the County and associated agencies and/or governmental agencies within Knox County on deeds, maps, and records within the Knox County Register's office." The license is governed by the license agreements, and Knox County does not receive "title" to the software.

The contract has two phases. Each phase has a pricing index and a maintenance component. The pricing is not broken out by hardware versus software licenses. Instead, Perceptics priced the hardware and licensing as a unit. The contract extends to Knox County the right to use the software under a non-transferrable license restricting its use to the County and the selected hardware.

The completion date of the contract, as amended, was August 2, 1991, but with service maintenance agreements for the continuation, completion and enhancement of the system in 1992, 1993, 1994, 1995 and 1996. As late as June 1996, the system had allegedly not performed as expected.

Northrop Grumman acquired Perceptics Corporation and sought to repair and complete the Knox County system. A later completion date of March 1997 was agreed upon,

at which time the system was to be in full compliance with the terms of the contract. When the defendants were unable to bring the system up to the alleged performance requirements, or even to a minimal operating standard consistent with the Register's duties, the County filed this suit for damages.

Perceptics moved to dismiss Knox County's second cause of action, which alleged breach of contract to supply the computer system, pursuant to Tenn. R. Civ. P. 12.02(6), on the ground that the four-year statute of limitations for breach of sales contracts under T.C.A. § 47-2-725(1) (1996) bars that claim. The Chancery Court denied the motion but granted Perceptics' motion to pursue an interlocutory appeal to this Court. We granted Perceptics' motion for interlocutory appeal and now have before us for *de novo* review the Chancery Court's denial of Perceptics' motion to dismiss the second of three claims alleged by Knox County. Rule 13(d), T. R. A. P.

We affirm the trial court's denial of Perceptics' motion to dismiss the second cause of action and remand the case to the Chancery Court of Knox County.

## II

Perceptics argues that the four-year statute of limitations in Article Two of Tennessee's Uniform Commercial Code (hereinafter "UCC") applies in this case because most of the assets to be transferred under this contract were goods (computer hardware and software), whereas the services rendered by Perceptics were merely incidental. Therefore, according to Perceptics, under Tennessee's "predominant factor test," which applies to transactions involving both goods and services, this is a contract for the sale of goods governed by the UCC, and the statute of limitations has run against Knox County.

Knox County argues in this appeal that it is entitled to proceed on its second cause of action because: (1) the common law doctrine of *nullum tempus occurit regi*[1] governs, and (2) Article Two of Tennessee's UCC is inapplicable because the County's claim arises out of a contract predominantly for services, not goods.

---

[1] literally, "time does not run against the king."

4

The trial court held that it could not determine, as a matter of law, whether the hybrid contract[2] at issue in this case is governed by the UCC, and opined that interlocutory appeal to this court should be granted

> to encourage the development of a uniform body of law in this state to guide trial courts in determining whether hybrid contracts such as the one in this case are capable of being determined to be subject to the provisions of the Tennessee Uniform Commercial Code as a matter of law, based on the four corners of the subject written instrument.

### III

We first consider Knox County's argument that the common law doctrine of *nullum tempus occurit regi* renders the four-year statute of limitations inapplicable, observing that if so, we need not reach Perceptics' goods vs. services issue.

The *nullum tempus* doctrine was most recently addressed in *Hamilton County v. Asbestospray Corp.,* 909 S.W.2d 783 (Tenn. 1995), which held:

> The common law doctrine of *nullum tempus occurit regi,* which is literally translated as "time does not run against the king," prevents an action brought by the State from being dismissed due to the expiration of the statutory period of limitations normally applicable to the specific type of action. This doctrine has been justified on the ground "that the public should not suffer because of the negligence of its officers and agents . . ." *State ex rel. Board of University School Lands v. Andrus,* 671 F.2d 271, 274 (8th Cir. 1982). Tennessee's version of this doctrine, found at T.C.A. § 28-1-113, provides as follows: "The provisions of this title [pertaining to statutes of limitation] do not apply to actions brought by the State of Tennessee, unless otherwise expressly provided." This doctrine is not to be lightly regarded, as we have repeatedly stated that statutes of limitation are looked upon with disfavor in actions brought by the State, and will not be enforced in the absence of clear and explicit statutory authority to do so. [citations omitted]
>
> Moreover, it is settled that the *nullum tempus* doctrine applies, in certain cases, to subordinate organs of the state, such as counties or municipalities. The basic rule regarding the applicability of *nullum tempus* to actions brought by subordinate bodies is set forth in *Wood v. Cannon County,* 25 Tenn. App. 600, 166 S.W.2d 399 (Tenn. 1942), where we stated:
>
>> The statute of limitations does not run against the sovereign or the state, or against a county, when [the county is seeking] to enforce a demand arising out of, or dependent upon, the exercise of its governmental functions as an arm of the state. But the statute does run against a county or municipality in respect of its rights or claims which are of a private or corporate nature and in which only its local citizens are interested, as distinguished from a public or governmental matter in which all the people of the state are interested.

---

[2]A contract involving both goods and services.

*Wood,* 166 S.W.2d at 401 [citations omitted]. *See also Jennings v. Davidson County,* 208 Tenn. 134, 344 S.W.2d 359, 361-362 (1961).

This standard requires us to determine whether Knox County's breach of contract claim against Perceptics is "of a private or corporate nature and in which only its local citizens are interested, as distinguished from a public or governmental matter in which all the people of the State are interested." *Wood,* 166 S.W.2d at 401.

The Tennessee Constitution requires that all counties elect certain officials:

The qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, *a Register* [emphasis added], a County Clerk and an Assessor of Property. Their qualifications and *duties shall be prescribed by the General Assembly.* [emphasis added]

The State of Tennessee requires clerks, registers and other officers to index records, as set forth in T.C.A. § 10-7-201:

Every clerk, register, or other public officer whose duty it may be to keep record books, wherein the records of any court or of any county shall be kept, shall keep an index to each book wherein any suit, decree, judgment, sale, mortgage, transfer, lien, deed, power of attorney, or other records shall be kept . . . to the end that any judgment, decree, sale, conveyance, mortgage, or other record may be found under the name of either party to any transaction of record.

T.C.A. § 8-13-108 also sets out certain duties of registers:

(7) Carefully preserve as permanent records the recorded copies of all deeds, deeds of trust and other instruments affecting interests in real estate;

(8) Exhibit the notebooks and instruments registered to all persons wishing to inspect them, during regular business hours;

Since the Tennessee Constitution mandates that all counties elect a register to perform duties specified by statute for the benefit of the State, including the registration and indexing of all deeds, mortgages and liens, we conclude that the county engages in a "public or governmental matter" when it brings suit against the supplier of a real estate registering and indexing computer system.

The point need not be labored that the Register's office is a vital function of government affecting all citizens of the State.

We conclude that the doctrine of *nullum tempus occurit regi* applies in this case, and the UCC statute of limitations is not applicable to Knox County's claim.

Our answer to this question obviates the need to decide whether the contract is primarily for services or for goods.

The case is remanded to the trial court for all appropriate purposes, with costs of this appeal assessed to Perceptics Corporation.

_____
William H. Inman, Senior Judge

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Don T. McMurray, Judge

7